**BLACKMAN v. MELLON, Secretary of the Treasury, et al.**

(District Court, E. D. New York. April 22, 1924.)

**1. Injunction ⊜⇒114(2) — Purchaser of denatured alcohol held not proper party to suit to enjoin interference with sales to him.**

One having permit to use denatured alcohol in manufacturing of insecticide *held* not proper plaintiff to suit to enjoin prohibition authorities from interfering with dealer who has been supplying him; such dealer or seller being proper party to make complaint.

**2. Injunction ⊜⇒136(2)—Temporary injunction against interference with plaintiff's purchases of denatured alcohol, pending hearing on citation questioning his proper use of permit, held unwarranted.**

Where plaintiff, having permit to use denatured alcohol in manufacturing of insecticide without warrant, refused to permit prohibition agents to take samples of his product for analysis, with result that Commissioner of Internal Revenue issued citation for hearing on question of revoking permit *held*, temporary injunction against interference with purchases by plaintiff pending hearing on citation was unwarranted.

**3. Intoxicating liquors ⊜⇒101—Exception to general prohibition in form of permit strictly construed.**

Courts should not be hasty in adding technical difficulties to reasonable enforcement of prohibition law, and permit, under National Prohibition Act, tit. 2, § 1, subd. 5 (Comp. St. Ann. Supp. 1923, § 10138½), to use denatured alcohol for specific purpose should be strictly construed.

**4. Intoxicating liquors ⊜⇒101—Refusal to permit prohibition authorities to analyze insecticide unwarranted on ground that formula is secret.**

Refusal by one having permit to use denatured alcohol in manufacture of insecticide to permit prohibition officers to take samples for analysis is unwarranted, on ground that formula is secret one, and that preparation should not be so sampled and analyzed, in absence of unfairness or unusual hardship.

**5. Injunction ⊜⇒145 — Unnecessary examinations of product manufactured by permittee to use denatured alcohol will not be assumed on affidavits alone.**

It will not be assumed on affidavits alone, on motion for temporary injunction, that holder of permit to use denatured alcohol in manufacturing of insecticide has been unjustly or maliciously harassed or subjected to unnecessary examination by Commissioner of Internal Revenue or those acting under him.

**6. Intoxicating liquors ⊜⇒101 — Prohibition agents held proper officers to demand samples of alcoholic product for analysis.**

Prohibition agents, acting under delegated authority of Commissioner of Internal Revenue, pursuant to National Prohibition Act, tit. 1, § 2 (Comp. St. Ann. Supp. 1923, § 10138¼b), and title 2, § 1, subd. 7, and section 28 (Comp. St. Ann. Supp. 1923, §§ 10138½, 10138½o) have authority to take samples for analysis of insecticide manufactured by holder of permit to use denatured alcohol.

**7. Intoxicating liquors ⊜⇒108(7)—Dismissal of proceedings questioning use of alcohol obtained under permit held not dismissible because of district in which brought.**

That proceeding under National Prohibition Act, tit. 2, § 9 (Comp. St. Ann. Supp. 1923, § 10138½dd), questioning permittee's use of denatured alcohol obtained by him and looking to cancellation of that permit, was instituted in district other than that in which permittee had right to insist on hearing, is not ground for dismissal before hearing.

Action by Leonard Blackman, as sole owner and proprietor of the Latin-America Manufacturing Company, doing business in the state of New York under such name, against Andrew W. Mellon, Secretary of the Treasury of the United States, and others. On motion in form of order to show cause seeking temporary relief pending trial. Motion denied.

Charles F. Murphy, of New York City, for plaintiff.

Ralph C. Greene, U. S. Atty., of Brooklyn, N. Y. (Guy O. Walser, of New York City, of counsel), for defendants.

INCH, District Judge. This is a motion, in the form of an order to show cause, seeking temporary relief pending a trial, in an action where to a limited extent the same relief is sought permanently. The order to show cause is based on the complaint in the action.

From this complaint it appears that plaintiff, two years ago, decided to go into the insecticide business. He invested $30,000, and took a lease for two years on a building in Brooklyn. He apparently needs and uses a large quantity of specially denatured alcohol in his business. In fact, he has been using on an average of 1,000 barrels of this denatured alcohol each month. In accordance with the National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138¼ et seq.) he applied for and received a permit to use specially denatured alcohol. After his preparation is manufactured, he sells it to another concern, which in turn, he alleges, makes large sales of it abroad.

Plaintiff's insecticide has been a success from the start, as he states that last year, the first year of the business, he sold over $1,-250,000 worth of this preparation, and during the two months of January and February this year he has sold over $400,000 worth. He has a pay roll of $600 a week, and

is under a large bonded contract to supply more of this preparation to his said customers. He does not make this denatured alcohol, but buys it from a dealer, who is referred to, but not named; the latter supplying it to plaintiff on order. On receiving this denatured alcohol, plaintiff then makes up this insecticide by a secret formula.

The above was the situation on March 20 of this year, when, plaintiff states, this dealer, who had been selling him this 1,000 barrels· of specially denatured alcohol each month, informed plaintiff that he either would or could not sell plaintiff any more, and that plaintiff's right to withdraw further denatured alcohol had been suspended by the Commissioner. Plaintiff, however, states that his permit had not yet then been, and has not yet been, revoked or canceled (paragraph 16 of complaint). Plaintiff further states that he has been informed by said dealer that the latter will make no further shipments to plaintiff of this denatured alcohol.

The relief asked for on this motion differs somewhat from that sought in said complaint, in that, in addition to asking that the defendants be enjoined from in any way preventing plaintiff from obtaining this deatured alcohol from persons authorized to sell same, unless and until his permit for the use thereof shall have been duly revoked, the plaintiff also seeks that defendants be enjoined from taking any steps to revoke or suspend his permit, except according to the National Prohibition Act, and in an amended notice of motion that the hearings as to revocation take place elsewhere than that designated in the citation.

[1] This dealer, from whom plaintiff apparently has been obtaining his supply, is neither a party to this proceeding nor mentioned by name. The court cannot compel this dealer to sell alcohol to plaintiff if he does not want to do so, and even if said dealer wants to sell, but is prevented by some suspension of his own permit, or otherwise, the application to be permitted to do so should be by this dealer, and not by one of his customers. If any dealer has violated the law, no customer should seek to help him continue to do so; and, if he has not violated the law, he is the one who should naturally seek the aid of this court.

[2] Therefore, if plaintiff is entitled to any relief, it must be such as is given solely for illegal interference with plaintiff's permit. According to plaintiff this permit has not been revoked by order, nor, according to certain decisions, cited by plaintiff's counsel in his skillful brief, has plaintiff's permit been temporarily revoked by the statute, unless this motion and action, addressed, as a portion of it is, to questioning steps taken by the Commissioner, pursuant to a citation issued under title 2, § 9 (Comp. St. Ann. Supp. 1923, § 10138½dd), is considered an action to review same. N. J. Wholesale Drug Co. v. Brown (D. C.) 289 F. 108; Wilson v. Bauers (Jan. 14, 1924, no opinion).

Certain cases cited by counsel for the defendants, as to this point, seem to have arisen after a revocation by order. While possibly some other construction might seem reasonable to me, should the necessity for decision arise, the confusion of a different construction should be avoided, if possible, pending a decision by an appellate court.

Besides, I do not consider that this proceeding and action before me is a review. It seems to me that plaintiff is seeking to prevent a hearing, rather than to review one, and I prefer to base this decision on the rights, if any, of plaintiff to obtain some or all of the equitable relief asked for on this motion, rather than on a disputed construction of a sentence in a statute. Assuming, therefore, that plaintiff's permit is not revoked, do the facts presented justify a court of equity in interfering, prior to the trial of the issues raised by the complaint and answer? I think not, and for the following reasons:

Plaintiff complains, not that his permit to use alcohol has been taken away, but that he is temporarily prevented from buying more alcohol. What he has had and still has in his possession he has duly used and can continue to use. It is not, therefore, his right to use alcohol, but something else in connection with it, that he complains is being interfered with.

It should be borne in mind that plaintiff does not manufacture this alcohol, nor has he a permit to do so, and therefore any argument that a permit to manufacture alcohol implies the right to buy the different ingredients used in its manufacture does not apply. It is "insecticide" that is being manufactured, and no permit is necessary as to this. However, when plaintiff uses alcohol in any form in the manufacture of this insecticide, then it is necessary to have a permit, not to manufacture the insecticide, but to use the alcohol.

[3] To deal in liquor in any form is a matter of permission under the present law, and the courts should not be hasty in adding technical difficulties to those already existing in the reasonable enforcement, by the Com-

missioner and his agents, of the law. This being so, the exception to general prohibition, in the shape of a permit, should be strictly construed.

Plaintiff's permit reads in substance as follows: "Permit is hereby granted to Leonard Blackman, trading as the Latin-America Manufacturing Company, located at 150 Utica avenue, Brooklyn, N. Y., removed to 172 Eighth street, Brooklyn, N. Y., to *use* for the purposes specified in an application dated 5—9—22 specially denatured *alcohol* manufactured in accordance with authorized formula No. 40–39 A–39 B in the manufacture of preparations approved by the department."

Title 2, § 1, subd. 5, National Prohibition Act (Comp. St. Ann. Supp. 1923, § 10138½) defines the term "permit": "It shall mean a formal written authorization by the Commissioner setting forth specifically therein the things that are *authorized*." Accordingly it seems to me clear that this permit to plaintiff is strictly confined to the right to *use* denatured alcohol.

There is no contention here that plaintiff's right to use alcohol has been directly interfered with. On the contrary, it is his right to purchase more alcohol, for the purpose of afterward using it, that he says is being interfered with. In a case where it clearly appeared that the interference complained of as to the right to purchase was but a subterfuge for concealing an interference with the ultimate right to use such alcohol, a court of equity undoubtedly could compel such fictitious interference to cease; but it cannot be assumed that such is the case here, nor simply on affidavits use this extraordinary power in advance of trial, unless plaintiff's right thereto is clearly shown.

Here not only are there disputed questions of facts, raised by affidavits, but also by a verified answer, and there does not appear to me to be such a plainly unreasonable interference with plaintiff's indirect rights under his permit as to warrant the issuance of a temporary injunction giving to plaintiff all the rights he would be entitled to after a successful trial of the issues.

The plaintiff attaches to and makes a part of his complaint what purports to be a notice by the collector of internal revenue, dated March 20, 1924, to the effect that the Commissioner of Internal Revenue has temporarily suspended the withdrawals of specially denatured alcohol by plaintiff, and it appears from both plaintiff's and defendant's papers that the action above referred to is based on the following facts: That the

government officials in charge of the proper enforcement of the law, and charged with the proper supervision over permits, have good reason to believe that plaintiff has not used the alcohol he has obtained in good faith and in conformity with his permit, and therefore have good reason to believe that plaintiff has been violating the law by means of this permit; that, therefore, they intend to find out the truth, and in the manner expressly laid down in the statute for that purpose.

This question of violation of the law by plaintiff must be the ultimate fact to be determined, for surely the government is not concerned so deeply with any alleged disrespect to any of its agents, or attaches such great importance to mere inspections, as to consider them in themselves a sufficient basis for the right to take away a valuable permit from a law-abiding citizen. What is important is for the government to have a reasonable opportunity from time to time to watch and examine the business in such particulars as may throw light upon this "use," and particularly to examine and analyze at frequent intervals; if they choose, samples of the preparation, for the purpose of ascertaining whether or not this "use," authorized by the permit, is the sole *use* to which, in good faith, the plaintiff is alone authorized to put the alcohol he purchases.

Such information can only be obtained by proper agents of the Commissioner of Internal Revenue. Therefore, when a permittee refuses such reasonable information, and refuses such taking of samples, it warrants, not only the inference of bad faith, but also the more important inference that the permit is being used to cover an unauthorized use.

This being the legal purpose of the hearing complained of, it does not seem to me that on a preliminary motion, based on affidavits only, with the facts in dispute, and where no unusual facts appear, and where the extraordinary relief is sought while refusing the government such necessary information and analysis, this court should interfere prior to a trial, or restrain a hearing apparently provided for by the statute. That there has been a refusal by plaintiff is shown by plaintiff's papers, and such refusal is based upon three grounds:

[4] First, that his formula is a secret one, and hence his preparation should not be so sampled and analyzed. Such contention certainly should not be approved, simply as a general statement, in dealing with the use by a permittee of any kind of alcohol. It should

clearly appear to be most unfair and an unusual hardship.

[5] Second, that he has been harassed by repeated taking of samples and other investigations. It cannot be assumed, particularly on affidavits, that this plaintiff or any other permittee has been unjustly or maliciously harassed or subjected to plainly unnecessary examinations by the Commissioner of Internal Revenue, or any of those duly authorized to make same, and all other kinds of examinations and tests, by which the use referred to can be ascertained, must and should be allowed and borne by a permittee, as a necessary inconvenience, perhaps, to the proper administration of the law, which this plaintiff, as well as every other citizen of this country, who believes in the Constitution and the proper administration of a law carrying it into effect, desires.

[6] Third, that the persons who called to take samples or analysis did not have authority. While there may be a divergence in decisions, there is no ruling by an appellate court, to which my attention has been called, deciding the question raised as to the status and relation between the Commissioner of Internal Revenue and the so-called Prohibition Unit. It is my opinion, however, that Congress, knowing full well the magnitude of the work of enforcement and the necessity which surely would arise for the proper division of the actual work, intended that the Commissioner of Internal Revenue should and could delegate the authority imposed on him, and that this was intended when they enacted: "Any act authorized to be done by the Commissioner may be performed by any assistant or agent designated by him for that purpose"—title 2, section 1 (7); title 1, section 2 (Comp. St. Ann. Supp. 1923, § 10138¼b); title 2, section 28 (Comp. St. Ann. Supp. 1923, § 10138½o)—which seems to mean that the Prohibition Commissioner, and in turn. the Prohibition Director, and in turn the Prohibition Agent, each duly appointed and acting within the scope of their authority, are, while engaged in the work imposed in the first instance on the Commissioner of Internal Revenue, his agents and a part, for the purpose of this work, of the Bureau of Internal Revenue, and are federal officers whose respective credentials must be respected.

To require a letter to be shown from the Commissioner of Internal Revenue is unnecessary red tape. As well might a patrolman be required to show a letter from the mayor of the city, or possibly from his appointee and subordinate, the commissioner of police. That such authority was duly delegated appears from the affidavits submitted by the defendants. The ultimate responsibility rests on the Commissioner of Internal Revenue. The acts of his agents are his acts. This interpretation, so far as I can see, in no way conflicts with any provision of the Constitution, but, on the contrary, seems common sense, based on the necessity of construing new laws to meet new conditions, and to advance and not retard the proper administration of a law, enacted to enforce the Constitution.

This decision in no way means that the court has no power to prevent alleged agents from doing or threatening to do acts plainly beyond their authority, or to exercise a proper supervision or correction over both principal and agents, where it clearly appears that such is necessary for the protection of rights of citizens, and has been brought to the attention of the principal, without any attempt by him to correct same being made. There is no evidence here of such a condition.

While the act apparently selects the Commissioner of Internal Revenue as the ultimate principal, and allows him to appoint agents as aforesaid, and such agents, acting within the scope of their appointment, represent the said Commissioner, the prohibition of intoxicating liquor as a beverage and the dealing in what might be termed business alcohol, both pure and denatured, could possibly with advantage be supervised by two distinct branches of agents, so that the multitudinous or police duties of those attending to the former would not delay and interfere with business men rightfully dealing in the latter. The act, while it prohibits intoxicating beverages, also seeks to insure an ample supply of business alcohol and promote its use in lawful industry. This in no way would conflict with the fact of agency, but would seem to be rather a matter of administration, for the Commissioner to consider in such ways as he deemed best.

The plaintiff, having refused on the various grounds, more or less conflicting, above mentioned, to allow the Commissioner, through his agents, to obtain proper information, the defendants did the only thing possible under the law. They proceeded, under section 9 of title 2 of the act, to issue a citation for a hearing, and if at such hearing the acts from which the inference of violation of the law had arisen were proved, and not satisfactorily explained, to revoke the permit, which had been abused.

Pending such a hearing, no circumstances are here suggested to me, from the papers, that would justify this court of equity in interfering at this time and under such' conditions to prevent such hearing, or in exerting itself on affidavits only, and with such a refusal before it, to see that such refusing permittee, charged with bad faith, is allowed to purchase more alcohol, which purchase, like a sale thereof, however important, and in the ordinary sense connected with the full enjoyment of the permit, is yet strictly not within the permit, and exists as a prior or subsequent right, incident only to a permit properly used, at least until some reason is clearly shown that said hearing is either not being conducted promptly and ·fairly, to a reasonably quick decision, so that such decision may be promptly reviewed, or that some act has been done by those of whom plaintiff complains that is clearly in violation of the authorization in plaintiff's permit.

There remains, therefore, but the question raised as to the proper district.

[7] This was raised by an amendment to the notice of motion. As to this question I believe the plaintiff is right. The hearing mentioned should be held in this case in the Eastern district of New York, which is the judicial district referred to in the' statute.. It is apparent, however, that the place is not important in and of itself prior to a decision, as the statute expressly allows the proceeding to be commenced in any district on consent, and until that consent is refused it naturally has to be started somewhere, and as according to the cases such proceeding itself does not create a revocation of the permit, it seems unnecessary to dismiss the proceeding before a hearing simply for the reason that the place in the notice is objected to. Rather it should be directed that the hearing be held in the proper district and that plaintiff be duly notified that the hearing place is changed to a place, etc., in this district. A new citation, however, may be issued, if so desired.

Accordingly I find no grounds which would justify this court in granting an injunction prior to the trial, where the facts are conflicting and a distinct issue of fact is raised by the pleadings. This motion originally came on for hearing on the 26th day of March. On consent of the counsel for both parties, and in order to permit the filing of an amended complaint and various affidavits desired by the parties, it was adjourned from time to time. The court refused, however, to continue, during all such adjournments, the temporary stay contained in the order to show cause. Consequently such stay ceased to exist some time ago, and it is not necessary to vacate same.

Motion denied.